And let's next call the other case set at 10 people v. Jones. Mr. Whitney for the appellate. Please proceed. Good morning, Your Honors, and may it please the Court, Counsel. On this appeal, Mr. Jones has presented seven issues and our opening brief pushed up against the page limit. But that simply reflects the fact that it consumed many pages just to describe and catalog the numerous errors committed by both the trial court and defense counsel in the court below. And, of course, it was our duty to preserve and cover all basis for relief. However, given that the State has appropriately confessed error on defense counsel's failure to comply with the certification requirements of Rule 604D, I suggest that the focus today be on whether that error was superseded by the trial court's wholesale failure to comply with Rule 402, as in people v. Hayes, and whether judicial economy dictates that we cut to the chase in this case, vacate the judgment and the guilty plea, and allow Mr. Jones to plead adieu. We can also consider Mr. Jones' ancillary request that this case be assigned a new counsel and a new judge, given the facts of this case. With respect to Rule 402, the operative term here, which, by the way, this Court refused to know about, the operative term here is that the trial court must show substantial compliance. But what we see in this case is substantial complacence. It's easier to count the Rule 402 admonitions that were given correctly than the ones that were given incorrectly because there was only one that was given correctly, that being the nature of the charge, 402A1. And in people v. Hayes, the Court held that where you have both reversible Rule 402 errors and reversible 604D errors, the 402 relief can take precedence under the plain error doctrine, and we can cut the chase and serve the interests of judicial economy in the process. To briefly recap and review the 402 admonitions that were not given correctly in this case, number one, the State stated the minimum and maximum sentence prescribed by the law, not the Court itself, as required by 402A2. And we decided in the cases of people v. Day and people v. Tripp, both the latter being decided by this district court, saying that it's the duty of the Court to personally address the defendant. It can't be delegated. It can't be delegated to the defense counsel of the State. And then the Court simply gratifying what one of the attorneys said was the minimum and maximum sentence. That's controlling the law. The State had no response to that other than to cite the Pritchett case, which was an apposite and wasn't even talking about sentencing. The Court said absolutely nothing, covering Rule 402A3, that the defendant had a right to plead not guilty or to persist in that plea if it has already been made, or to plead guilty. Missed that one entirely. Was that, say, an open plea or a negotiated plea? It is our position it was a negotiated plea. It falls into the category not a open plea. Not an open plea because the State did recommend a cap. Part of the trouble that came in this case and part of the confusion that arose in this case was because neither counsel decided to disclose that to the Court until defense counsel Costa, in his second motion withdraw plea, finally revealed that. However, that eventuality was covered by this Court's decision in the People Be Right case back in 1974 decided by this district. It's still good law where this Court held that even though there was a promise to recommend a cap and the Court exceeded the cap in its sentencing decision, that in itself doesn't make it involuntary. But if the defendant was never told that the promise was not binding on the Court, it cannot be said that the defendant's plea of guilty was truly known involuntary. And that's critical in this case. The cap that was recommended by the State was 32 years. The Court sentenced Mr. Jones to 35 years. He never got that critical warning under Rule 402B3 that the Court might sentence you to a – give you a sentence that's different than that contemplated in the agreement. Now, I understand – He didn't get that on the record. Is the record clear? Did he get it at all from counsel? And does that make a difference? There – I don't think it makes a difference in this case. There's nothing in the record to say one way or the other whether he got that warning from counsel. However, that kind of leads into another whole area, and that is the wholesale failure of Defense Counsel Costa in many respects in failing to advise his client very well. And that did appear in both the first and the second motions to withdraw a guilty plea. There was a premature motion to withdraw a guilty plea in this case, but the Court held a hearing on it. And then afterwards, after the sentencing, there was a second motion to withdraw a guilty plea, and the Court didn't hold a hearing, which is another ground for reversal here. But during the first hearing, Mr. Costa said in court that the reason why Mr. Jones wanted to withdraw the plea is because he could – he did explain exactly what the ramifications were of his guilty plea, and he's talking about his client. He expected his client to explain the ramifications of the guilty plea to him, and then Mr. Costa goes on and says that he – that his client, Mr. Jones, had found out that he was going to take a guilty plea just a few days before that. He didn't understand what's going on, and he was in kind of a state of shock. Well, wait a second. What do you mean Mr. Jones found out he was going to take a guilty plea? Wasn't that supposed to be his decision? What basically Mr. Costa confessed on the record is that he had totally confused his client about the nature of the attorney-client relationship. Who told him – who told Mr. Jones that he was going to take a guilty plea? And that should have set off alarm bells to this Court – to the lower court. And yet there was no follow-up to find out whether this was truly voluntary knowing. What exactly did you explain to your client? There was no questioning from the Court. The Court just let this pass. And that should be extremely troubling to this Court that they would make a statement like that. Later on, after the sentencing, Mr. Costa files a second motion to withdraw a guilty plea, and then he basically admits he didn't advise his client very well. In that point, he basically admitted he was ineffective in advising his client prior to taking the guilty plea, which I think is certainly substantiated by the record. So – and that incidentally goes to one of the items of ancillary relief for requesting that Mr. Jones be assigned new counsel in this case. If you look at the catalog of errors by Mr. Costa, it can't be attributed to strategy. Fumbling the ball in every possession is not a strategy. Do we have the ability to do that, you think? Yes. And I do cite specific cases. I can certainly file a supplemental brief that would assist the Court. But I think the Court's plenary authority under, I believe it's Rule 366, makes it very clear that this Court can assign it to new counsel and assign it to a new judge. I don't think you need to file a supplemental. I appreciate your offer, but I don't think that's necessary. Yeah, but certainly it's not too difficult to find. With respect to Judge, there was a recent case, the Talley case that this Court decided just recently that involved reassigning to a new judge. In any event, we have wholesale failure to give the proper admonitions under Rule 402. And, again, there's a whole catalog of them. Judicial economy, as well as the decision in the Hayes case, dictates why go through just sending it back to the Court for a Rule 604D certificate, when we know already that what would happen is new counsel would basically look at what we presented in our brief, look at all the 402 failures that occurred here, and one of two things would happen. Either the Court does allow them to withdraw its guilty plea then, or if it doesn't, then we're right back up here making the same argument. It cannot possibly or conceivably serve the goal of judicial economy to go through, jump through the hoops of Rule 604D, when we already know what the outcome needs to be due to the wholesale failure to admonish this client, giving us absolutely no confidence that this plea of guilty was truly knowing, voluntary, and intelligent under the circumstances of this case. Thank you, Your Honor. Thank you. Ms. McCormick. Ms. McCormick, let me suggest you start there. I think you've conceded that it's going to go back under 604D. So why don't you start with response to why we should look any further, should or should not look any further than that. Well, Rule 604D, as has been explained by the Illinois Supreme Court, was put forth to protect the rights of the defendant who pleads guilty. And for that reason, the Illinois Supreme Court has required strict compliance with the certificate requirement. The reason why is because those issues that are not raised in a motion to withdraw guilty plea or a motion attacking the sentence are weighed. And that's why the certificate requirement is so strictly enforced. And in this case, the defendant filed a premature motion attacking his guilty plea prior to sentencing. And he filed with that, the defense counsel filed with that a 604D certificate that was deficient. It did not strictly comply with the rule. Surely, undersurely, that whole thing was a nullity. It doesn't mean this court can't look at whether a prematurely fired certificate was sufficient in any event, but it wasn't. Then after sentencing, the defense counsel filed a second motion attacking the guilty plea, but utterly failed to file a Rule 604D certificate. Now, the court did not hold a hearing on that, but just summarily denied that second motion. That order is the order appealed, and that order must be reversed. Because all the way from Wilk to most recently in Lindsay, the Illinois Supreme Court has made it absolutely plain that where there is not strict compliance with this Rule 604D certificate requirement, as in this case, which is a condition precedent to appeal. I'm not saying this court lacks jurisdiction. It has jurisdiction to address that second order. But when there is not strict compliance with the certificate requirement, the court can only give one remedy, and that is remand to the circuit court below. And this is under Lindsay. There must be the strict compliance with the certificate requirement. And counsel must also determine whether they need to file a new motion to withdraw a guilty plea or a motion attacking the sentence as is appropriate in the case. That is the only remedy that this court can give, vis-a-vis the order denying the second motion to withdraw a guilty plea. That's it. This court cannot reach the merits of anything that was raised in motions to withdraw a guilty plea below, and it cannot reach the merits of anything raised for the first time on appeal. The reason why is the court must insist, and the Illinois Supreme Court has made this plain, the court must ensure strict compliance with the certificate requirement so that it protects the defendant's potential waiver of any issues that could have been raised. Now, if this court reaches merits, what's going to happen? The defendant's going to say, well, I had an effective assistance counsel, and there was this issue that I wanted to raise and this issue I wanted to raise. The Illinois Supreme Court has utterly rejected the judicial economy argument. That argument was made years ago and settled. The appellate court can't, for issues of judicial economy, reach issues not raised below or are even raised below where there's been no compliance with the certificate requirement precisely because the Illinois Supreme Court says if you don't have strict compliance, the defendant risks waiver. And it is to avoid the risk of waiver that the Illinois Supreme Court requires this court to remand it for strict compliance with the certificate requirement and to give the defendant an opportunity to file a new motion attacking the plea or the sentence as may be the case. And that really settles the issue of whether this court can reach the merits of issues that were raised or not raised below. There simply was no compliance with the certificate requirement in this court. It is bound by everything from James and Wilk and Wallace through Shirley and Lindsey and Lindler to remand it, to reverse that order and to remand it for strict compliance with the rule. Now, as to the issue of whether this court should order remand before a different judge, this court has the ability to reach that issue and should. And in regards to that, that's the only reason that this court can look at, semi-look at the merits of what the defendant raises. But you're not going to be looking at the merits. You're going to be only looking to see whether or not those issues demonstrate the bias or prejudice that requires remand before a different judge. Now, the defendant has the burden to meet that standard, and he fails to. And there's multiple reasons. The defendant first complains that the judge was biased because of his disingenuous, that's a quote, comments about the defendant entering an open plea as opposed to a negotiated plea. The record shows that, one, the defendant was originally charged with three counts of murder based on different mental states, but also alleging that he committed the murder by using a handgun. And the state put forth notice that they were going to seek a 25-year enhancement. As a concession relating only to the charge, those three were withdrawn, and a new charge, charging first degree of murder, was filed, which did not include the shooting with a handgun. So it was a concession as to charge, not as to sentencing. And the Illinois Supreme Court, in discussing whether such an arrangement is an open plea versus a negotiated plea, has said that where there is no concession as to the sentence, it is an open plea. The other thing is the record shows that if the defendant's written guilty plea clearly states that he is subject to the full penalties, a range of penalties, then there is no sentencing agreement. So it is not a negotiated plea. There was nothing that pertained to the sentence. So the court comments that the plea that was presented was an open plea. They're not disingenuous. A lot of the defendant's complaints about the Rule 402 admonishments have to do with whether the court failed to admonish him as would have been required if there was a negotiated plea. And since there was no negotiated plea, even an erroneous admonition would not be a basis for finding prejudice or bias. Because even an erroneous ruling or an erroneous act by a judge does not by itself demonstrate prejudice or bias. The defendant then complains about injudicious antagonism because the court did not hold a hearing on his second motion to withdraw a guilty plea. Well, the court couldn't hold a hearing on that second motion because it was not properly accompanied by a 604D certificate. The court did err in ruling on that second motion in the absence of a Rule 604D certificate. But then again, a mere error in ruling does not demonstrate prejudice or bias. Then the defendant complains that the court considered facts that weren't in evidence in sentencing him. And basically cross-examined him during his statement and allocution about those facts. But this does not demonstrate prejudice or bias. The defendant was basically backtracking from what the court had considered as the factual basis, which was the evidence presented at the preliminary hearing explicitly considered by the court as the factual basis. And in the preliminary hearing, it came out that the victim was shot in the back and by the use of a stone gun. So we ask the court to reverse and remand for proper advice. Thank you. Rebottom. Thank you, Your Honors. With respect to the 604D issue versus the Rule 402 issue that Your Honor questioned opposing counsel about, what I heard was mostly the argument for strict compliance with 604D. But what I did not hear is the state address, the opinion of the sister district and the first district in 2002 in the People v. Hayes case, where the court was well aware of the certification requirement and strict compliance with that and was aware of the rule in James, the Supreme Court rule in James. It even cited that rule in its own decision but still decided that where you have abundant evidence of Rule 402 failure, that that can take precedence. And it didn't talk at any length about judicial economy, but I think that's clearly the subtext there, that if you know what the result's going to be and you're basically vacating the guilt complete, giving the defendant a clean slate, then that's exactly what should happen. There was no answer to Hayes by the state. Unless this Court is prepared to overturn Hayes or disagree with Hayes, I think it should follow the precedent established by Hayes. With respect to the judicial reassignment request, what counsel did not talk about, here is the elephant in the room, and that was Judge Schwartz using the opportunity of the sentencing hearing as a bully pulpit to rail against the people of Carbondale, whether they deserve it or not, about their shortcomings, and that occurred immediately before he sentenced Mr. Jones to 35 years. He was pontificating about how commonplace gun violence has become in Carbondale and how he was shocked that it's allowed to continue because responsible citizens just don't seem to show their proper outrage. There was nothing in the record in this case to indicate the frequency of gun violence in Carbondale, nothing to show what responsible citizens in Carbondale do or do not do, or even a definition of what proper outrage is. And even if there was something in the record and even if the Court's perceptions were true, Mr. Jones was not responsible for the perceived failings of the people of Carbondale and should not be punished for them. This was an entirely inappropriate sentencing factor that the Court was referring to, and it had to come from an extrajudicial source because there was nothing in the record to give him these kinds of facts. So that was a clear indication of the Court's very palpable bias against my client, that he would go to these lengths to justify punishing him for 35 years in this case. Just a minor point, what I said in the opening brief was that it was arguably disingenuous that he lacked any knowledge of a negotiated plea agreement. That's because at the hearing on the first motion to withdraw the plea, the Court said on the record that it understood that there had been negotiations because it was aware that the State had amended the pleadings in exchange for getting the plea of guilty. Now, what the Court wasn't told was about the sentencing cap, but at least knew that there were negotiations going on. That's why I said it was arguably disingenuous. But the important point here about the Rule 402b3 admonitions is that they're to protect the accused. They're not there as a trap for the unwary. The fact is there was a negotiated plea that included a cap. Under Rule 605, that's considered a negotiated plea agreement. The fact that it wasn't disclosed to the Court was unfortunate and goes to our ineffective assistance argument, among many other things. But there was a negotiated plea. Therefore, Mr. Jones should have gotten a warning. That's the issue here. Whether the Court could be excused for not being aware of it or not, that's the real issue here. And because of that, we cannot possibly say that Mr. Jones' plea was knowing, intelligent, and voluntary. He has to be allowed to withdraw it. And accordingly, we respectfully ask this Court to vacate the judgment and sentence in the Court below, including the guilty plea, and allow Mr. Jones to plead. Thank you, Your Honors. Thank you, Counsel. We will take this case under advisement. We're going to take a short recess before we proceed with the 11 o'clock case. Court will be in recess.